UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BAYER HEALTHCARE LLC,

                Plaintiff,

        v.

ELI LILLY AND COMPANY,

                Defendant.

Civil Action No. 11-cv-3047-AKH

# ELI LILLY AND COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)

Dated: New York, New York
       July 28, 2011

Adam B. Michaels (AM 9120)
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 808-2700

## TABLE OF CONTENTS

PAGE(s)

ARGUMENT .................................................................................................................................. 1

   I. Bayer Does Not Dispute that this Action Could Have Been Brought in the Southern District of Indiana. ................................................................................................................................ 1

   II. The Balance of Convenience Supports Transfer to the Southern District of Indiana. ............................................................................................................................ 2

     A.   The Center of Gravity of this Litigation is the Southern District of Indiana. ...................... 2

     B.   The Southern District of Indiana Would Be More Convenient for the Parties and the Witnesses. ............................................................................................................. 4

     C.   Bayer's Choice of Forum is Entitled to Little Weight. ....................................................... 7

     D.   The Locus of Operative Facts Warrants Transfer of this Case. ........................................... 9

     E.   The Location of Relevant Documents and Ease of Access to Other Sources of Proof Favor Transfer to the Southern District of Indiana. .............................. 12

     F.   The Interests of Justice Favor Transfer to the Southern District of Indiana. .................... 13

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A. Olnick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439 (2d Cir. 1966)..........................................13

*Adler v. Am. Standard Corp.*, 478 F. Supp. 8 (S.D.N.Y. 1979)........................................................8

*Amick v. Am. Express Travel Related Servs. Co.*, No. 09 Civ. 9780 (AKH), 2010 U.S. Dist. LEXIS 6483 (S.D.N.Y. Jan. 26, 2010).........................................................................2, 7

*In re Apple, Inc.*, 602 F.3d 909 (8th Cir. 2010) ...............................................................................12

*Bastille Props., Inc. v. Hometels of Am., Inc.*, 476 F. Supp. 175 (S.D.N.Y. 1979) ...........................7

*Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367 (S.D.N.Y. 2006) ........2, 10

*Blacher v. Ridge*, 436 F. Supp. 2d 602 (S.D.N.Y. 2006)................................................................1, 7

*Brasseler USA Dental, LLC v. Discus Dental, Inc.*, 04 CIV.9404 (NRB), 2005 WL 1765706 (S.D.N.Y. July 25, 2005) ..........................................................................................2, 9

*Cento Group, S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058 (S.D.N.Y. 1993) ..............................4

*Cinema Amusements v. Loew's, Inc.*, 85 F. Supp. 319 (D. Del. 1949) ............................................8

*Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 594 F. Supp. 731 (D. Minn. 1984) .............7

*In re Cuyahoga Equip. Corp.*, 980 F.2d 110 (2d Cir.1992)..............................................................2

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370 (S.D.N.Y. 2006) .................4

*Glen Knit Indus., Ltd. v. E. F. Timme & Son, Inc.*, 384 F. Supp. 1176 (E.D. Pa. 1974) .................8

*Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48 (2d Cir. 2000).......................1, 7

*Olympia Group, Inc. v. Cooper Indus., Inc.*, 00 CIV. 7367 (MBM), 2001 WL 506219 (S.D.N.Y. May 14, 2001).........................................................................................................10

*Orb Factory Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203 (S.D.N.Y. 1998) ............................6

*Plastistarch Int'l Corp. v. Plastistarch Corp. Ltd.*, 484 F. Supp. 1312 (S.D.N.Y. 1980)................7

*Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628 (S.D.N.Y. 1999).............................................10

*Royal & Sunalliance v. British Airways*, 167 F.Supp.2d 573 (S.D.N.Y.2001) ..........................4, 5

*Samson Lift Technologies v. Jerr-Dan Corp.*, 09 CIV. 2493RJH, 2009 WL 2432675 (S.D.N.Y. Aug. 7, 2009) ...................................................................................................12

*Stauffer Chem. Co. v. FMC Corp.*, 218 F. Supp. 568 (D. Del. 1963) ..............................................7

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ...................................................................2

*Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.*, 774 F. Supp. 858 (S.D.N.Y. 1991) .............2

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRF-PMF (S.D. Ill. March 8, 2010) ...............................................................3

*Zetlin/Oxhandler, Inc. v. Ridgely/Philadelphia Ltd. P'ship*, 86 CIV. 5895 (JFK), 1987 WL 18655 (S.D.N.Y. Oct. 16, 1987) ...........................................................................................7

**STATUTES**

*28 U.S.C. § 1404(a)* ...............................................................................................................1, 8, 14

*Kan. Stat. Ann. § 65-672* ................................................................................................................5

Defendant Eli Lilly and Company ("Lilly"), by and through counsel, hereby submits this reply memorandum in support of its Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). The center of gravity of this case is the Southern District of Indiana because resolution of this case will likely turn on facts related to the development of promotional material in Southern District of Indiana and in light of all the facts and circumstances discussed below. Lilly therefore respectfully requests the Court grant its Motion to Transfer to the Southern District of Indiana.

## ARGUMENT

As discussed below, the case should be transferred to the Southern District of Indiana where the principal events occurred and Lilly's principal witnesses are located. *See, e.g.*, Bayer Cropscience's Mems. in Supp. of Mot. to Transfer, No. 4:11-cv-464-RWS (E.D. Mo. May 5, 2011) (Ex. G);[1] Bayer Cropscience's Mems. in Supp. of Mot. to Transfer, No. 4:11-cv-464-RWS (E.D. Mo. June 16, 2011) (Ex. H); Order Granting Transfer, No. 4:11-cv-464-RWS (E.D. Mo. July 15, 2011) (Ex. I) (in which Bayer's sister company, Bayer Cropscience, successfully moved to transfer a case from the Eastern District of Missouri on the basis that the principal events occurred and Bayer's principal witnesses were located in North Carolina).

I.  **Bayer Does Not Dispute that this Action Could Have Been Brought in the Southern District of Indiana.**

As an initial matter, Bayer does not dispute that venue for this matter is proper in the Southern District of Indiana because this action "might have been brought" there. 28 U.S.C. § 1404(a). Not only does Lilly reside in the Southern District of Indiana for purposes of personal jurisdiction and venue, but Bayer HealthCare is a limited liability company that resides Indiana

---

[1] "Ex. __" refers to the exhibits annexed to the Affidavit of Adam B. Michaels, sworn to June 27, 2011, submitted previously or the Affidavit of Adam B. Michaels, sworn to July 28, 2011, submitted herewith.

as well. *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000) (finding that citizenship of a limited liability company is the citizenship of each of its members); *see also Blacher v. Ridge*, 436 F. Supp. 2d 602, 608 (S.D.N.Y. 2006) (finding that a corporate plaintiff resides in its place of incorporation for venue purposes). Thus, this Court only need decide whether to transfer this action for the convenience of the parties and witnesses and in the interest of justice. *Amick v. Am. Express Travel Related Servs. Co.*, No. 09 Civ. 9780 (AKH), 2010 U.S. Dist. LEXIS 6483, *3-4 (S.D.N.Y. Jan. 26, 2010).

II.     **The Balance of Convenience Supports Transfer to the Southern District of Indiana.**

   A.     The Center of Gravity of this Litigation is the Southern District of Indiana.

Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district. *Amick,* 2010 U.S. Dist. LEXIS 6483 at *4. It is well established that motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis. *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (citing *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992) and *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). In exercising this discretion, one core determination for the Court is the location of the "center of gravity of the litigation." *Amick,* 2010 U.S. Dist. LEXIS 6483 at *4-5. Contrary to Bayer's opposition, the center of gravity is not the Southern District of New York. Rather, the center of gravity is the Southern District of Indiana. *See Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (transferring case where the events at issue and almost all of the pertinent witnesses were located in California.)

To illustrate, the principal events giving rise to this litigation occurred in the Southern District of Indiana. *See Brasseler USA Dental, LLC v. Discus Dental, Inc.*, 04 CIV.9404 (NRB), 2005 WL 1765706 (S.D.N.Y. July 25, 2005) (focusing on location where

promotional material originated because "[r]esolution of the case will likely turn on whether the Zip! Burs comparative claims were false or misleading, not where they were distributed"). In this case, Bayer complains of a letter sent by Elanco to veterinarians. (Compl. ¶¶ 21-31.) The development of this letter, the drafting of this letter, and the decision to send the letter all occurred in the Southern District of Indiana, not in New York. (Graves Decl. ¶ 25). In its opposition, Bayer focuses on the fact that the letter was allegedly sent to veterinarians in New York. (Bayer Mem. 3.) Bayer also alleges, however, that the letter was sent nationwide (Compl. ¶21). Therefore, the connection with the Southern District of New York is no more compelling than in any other district where the letter was received.

Additionally, as set forth in Lilly's initial brief in support of its Motion to Transfer, *all* of Elanco's core corporate employee-witnesses reside within the Southern District of Indiana. (Lilly Mem. 7-8; Graves Decl. ¶¶ 6, 20-22.) Further, Bayer is a resident and citizen of Indiana and, when expedient, fully embraces this citizenship in federal court. *See* Bayer Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction at ¶ 12, 13, *In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRF-PMF (S.D. Ill. March 8, 2010) (Ex. A).

Moreover, Bayer Animal Health, the only factually relevant entity for purposes of this litigation, is not headquartered in the Southern District of New York, but in the District of Kansas. For that reason, and as more fully discussed below, no significant Bayer employee-witnesses are located in New York. Further, Bayer's alleged injury is not limited to activities that occurred only in New York, but encompasses alleged activities occurring throughout the United States, including in the Southern District of Indiana. In light of these facts and circumstances, the

center of gravity is not the Southern District of New York and transfer to the Southern District of Indiana is appropriate.

### B. The Southern District of Indiana Would Be More Convenient for the Parties and the Witnesses.

The convenience of witnesses is the single most important factor in the analysis of whether transfer should be granted. *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006); *Cento Group, S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Royal & Sunalliance v. British Airways*, 167 F.Supp.2d 573, 577 (S.D.N.Y.2001). In this case, the convenience to Lilly's employees in having the case transferred to the Southern District of Indiana outweighs any alleged convenience to Bayer Animal Health witnesses in proceeding in the Southern District of New York.

As noted, *all* of Elanco's material witnesses familiar with the disputed promotional material, correspondence and communications with sales representatives, the development of marketing materials, and the creation of mailings and communications to veterinarians reside in the Southern District of Indiana. (Graves Decl. ¶¶ 6, 20-22.) It is of no consequence that Lilly is a large, global company, with operations in numerous jurisdictions and ample means to litigate in this District. (Bayer Mem. 12.) Elanco's employee-witnesses—even if employed by a "global company"—are real people with families and jobs; travelling to New York to attend potential hearings and a lengthy trial would seriously inconvenience their family and personal lives, not to mention disrupt their work and cost money.[2] Elanco does not have any

---

[2] *Cf.* Bayer Cropscience's Mem. in Supp. of Mot. to Transfer, No. 4:11-cv-464-RWS at 5-6 (E.D. Mo. June 16, 2011) (in which Bayer Cropscience argues that, "Bayer's employee-witnesses-even if employed by a

-4-

offices or facilities in New York. (Graves Decl. ¶ 6.) It would be far more convenient for these individuals to testify in the Southern District of Indiana, where they live and work, than it would be for them to travel to New York.

In contrast, upon information and belief, Bayer's material witnesses are likely located outside of the Southern District of New York. The declaration submitted in connection with Bayer's brief indicates that Bayer Animal Health's primary decision-makers are located in Shawnee, Kansas—nearly 500 miles away from the Southern District of Indiana and over 1,200 miles away from the Southern District of New York. In other words, Bayer Animal Health employees based in Kansas would have to travel regardless of where this case is tried. Thus, contrary to Bayer's argument that transfer of this case would merely "shift the inconvenience" from one party to the other (Bayer Mem. 9), transfer of this case to Indiana would likely be a wash for Bayer employee-witnesses, but would be far more convenient for Elanco employee-witnesses.

In its opposition, Bayer stretches to identify even four employees located in the Southern District of New York. These employees are low-level sales and technical representatives who likely report to superiors at Bayer Animal Health's Kansas headquarters and whose testimony would be peripheral to the issues central to this litigation. *See* Luther Decl. ¶ 10; *Royal & Sunalliance*, 167 F.Supp.2d at 577 ([w]hen weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district"). Unlike Bayer Animal Health and Elanco's material witnesses located outside the Southern District of New York, these four witnesses were likely identified solely for the purpose of opposing Lilly's Motion to Transfer and may not even have

---

"multinational corporation"-are real people that have families and jobs; travelling to Missouri would seriously inconvenience their family and personal lives, not to mention disrupt their work and cost money") (Ex. H).

been disclosed had this case been filed in any other court in the nation. Notably, and in this regard, Bayer has expressly alleged injury under Kansas' false advertising statute, Kan. Stat. Ann. § 65-672 (*see* Compl. ¶ 45), but has tellingly failed to disclose similarly-placed field sales emplyees located in Kansas. Bayer undoubtedly employs similarly situated representatives and veterinary technical support outside of New York and in Indiana.

Finally, Bayer contends that Lilly's declaration is too "vague" and "general" with regard to the identification of witnesses. (Bayer Mem. 10.) For example, Bayer makes the conclusory argument that Lilly's assertion that "[n]o Companion Animal Health District Managers or Field Sales Technical Service employees work or reside in the State of New York" is "too vague" to support transfer. Nothing, however, is vague about this statement—there is not a more absolute figure than zero—and the authority referenced by Bayer does not support its argument. For example, Lilly has not alleged that "most" of Elanco's management team works and resides in Indiana or that "most" Elanco employees who are decision-makers with respect to marketing and communication strategies with veterinarians work and reside in Indiana. *See Orb Factory Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) (denying transfer where movant asserted that "most" of its witnesses worked and resided in the proposed transferee district). Instead, Mr. Graves' unrebutted declaration very clearly shows that *all* of Elanco's relevant corporate witnesses are located in the Southern District of Indiana, and that Elanco Companion Animal Health's administrative, sales and marketing, technical support, field sales management, market research and legal functions are based and managed in Greenfield, Indiana. (Graves Decl. ¶¶ 9-17). Ultimately, in light of the facts and circumstances in this case, the Southern District of Indiana is more convenient for the parties and the witnesses.

C. <u>Bayer's Choice of Forum is Entitled to Little Weight</u>.

Bayer makes a straw man argument that its choice of forum should be given "great weight" because its principal place of business is in this District. But Bayer Animal Health is the focus of this lawsuit, not Bayer HealthCare LLC, which had nothing to do with the events giving rise to this lawsuit. Accordingly, if any "principal place of business" is given weight, it should be that of the Kansas-based Bayer Animal Health, not Bayer HealthCare LLC.

Even if the focus of the inquiry were Bayer HealthCare LLC, Bayer HealthCare has previously argued in federal court that it is a citizen of Indiana. Similarly, Bayer HealthCare is a wholly owned subsidiary of Bayer Corporation, and therefore is a resident of Indiana for venue purposes. *Handelsman*, 213 F.3d at 51-52; *see also Blacher* 436 F. Supp. 2d at 608; *Bastille Props., Inc. v. Hometels of Am., Inc.*, 476 F. Supp. 175, 177 (S.D.N.Y. 1979) ("Although Bastille Properties, Inc. is a Delaware corporation, they argued that its doing business in New York rendered it a New York resident. Defendant correctly responded, however, that for venue purposes corporate plaintiffs are residents only of the state of incorporation."); *Zetlin/Oxhandler, Inc. v. Ridgely/Philadelphia Ltd. P'ship*, 86 CIV. 5895 (JFK), 1987 WL 18655 (S.D.N.Y. Oct. 16, 1987) ("Although the plaintiff claims that its principal place of business is New York, this fact is irrelevant for venue analysis. As decided in *Plastistarch Int'l Corp. v. Plastistarch Corp. Ltd.*, 484 F. Supp. 1312, 1316 (S.D.N.Y. 1980), '[f]or venue purposes, a corporate plaintiff resides only at its place of incorporation.'"). Accordingly, Bayer's decision to bring this action in the Southern District of New York should be accorded "a lesser degree of deference" because Bayer is not a citizen or resident of New York, and the events giving rise to this action are only "minimally connected with this district." *Amick,* 2010 U.S. Dist. LEXIS 6483 at *5.

Moreover, that Bayer HealthCare LLC is the nominal (or juridical) Plaintiff to the suit is irrelevant when this action involves competing animal health entities whose principal

-7-

places of business are outside the Southern District of New York. Courts routinely consider the location of non-juridical corporate entities such as divisional headquarters,[3] branch offices,[4] and manufacturing plants[5] when deciding motions to transfer based on § 1404(a). *See, e.g.*, *Adler v. Am. Standard Corp.*, 478 F. Supp. 8, 8 (S.D.N.Y. 1979) (granting transfer where individual plaintiff was: (1) a citizen of the proposed transferee district; (2) a resident of the proposed transferee district; and (3) employed at the defendant's Commercial Painting Division headquarters which were located in the transferee district).

In this case, there can be little dispute that Bayer Animal Health's "home state" is Kansas. Indeed, Bayer Animal Health's "Community Involvement" website touts the fact that its headquarters are located in the "Heartland of America" and highlights Bayer Animal Health's role as a "leader" in the Kansas City community. *See* Bayer Animal Health, Community Involvement, http://www.bayer-ah.com/community.cfm (last visited July 28, 2011) (Ex. J). By contrast, nowhere does the Bayer Animal Health website tout its community involvement in or around Tarrytown, New York. Additionally, of the thirty-five press releases archived on the Bayer Animal Health "News" website since 2006, over thirty were issued from Shawnee, Kansas.

---

[3] *See, e.g., Stauffer Chem. Co. v. FMC Corp.*, 218 F. Supp. 568, 570 (D. Del. 1963) (denying transfer where New York was the place of "at least" defendant's FMC's major 'Division Headquarters'"); *Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 594 F. Supp. 731 (D. Minn. 1984) (holding that venue could be transferred from Minnesota to Arkansas where Delaware corporation had division in Missouri and thus the inconvenience to it of litigating in Arkansas was less than inconvenience to Arkansas corporation in litigating in Minnesota, where witnesses lived either in Arkansas or in locations substantially closer to Arkansas than Minnesota).

[4] *See, e.g.*, *Cinema Amusements v. Loew's, Inc.*, 85 F. Supp. 319, 324 (D. Del. 1949) (granting transfer to District of Colorado where all three defendants maintained branch offices in Denver and employee-witnesses were located there).

[5] *See, e.g.*, *Glen Knit Indus., Ltd. v. E. F. Timme & Son, Inc.*, 384 F. Supp. 1176, 1178 (E.D. Pa. 1974) (denying Defendant's motion to transfer and noting that Defendant's plant, where the alleged defective dyeing was done, was located closer to Philadelphia than New York City)

Bayer argues that a number of the Animal Health division's administrative functions are run from Tarrytown, including its Accounting, Communications, Compliance, Human Resources and Law and Patents groups. (Bayer Mem. 2.) Even if this were accurate,[6] the declaration submitted in support of Bayer's memorandum shows that the functions most closely related to this litigation are centered in Shawnee, Kansas. Indeed, as Bayer concedes in its opposition brief, those Bayer employees knowledgeable about Bayer Animal Health sales of pet medicines, advertising and marketing, market research, and sales operations are all based in Kansas, not in the Southern District of New York. Thus, when Bayer is citizen and resident of Indiana, and where the facts giving rise to this action have minimal connection with Bayer's alleged Tarrytown headquarters, Bayer's choice of forum should be entitled to little deference, and the case should be transferred to the Southern District of Indiana.

        D.      <u>The Locus of Operative Facts Warrants Transfer of this Case</u>.

Bayer oversimplifies this District's case law in arguing that "[t]he key issue is not where Lilly hatched its plot to unfairly compete against Bayer, but rather where Lilly is alleged to have disseminated its false statements and implemented its unfair competition." (Bayer Mem. 7.) Although some courts, in analyzing the locus of operative events in unfair competition and false advertising cases, do consider the location where the offending material was distributed, *see, e.g.*, *Student Advantage*, 00 CIV. 1971 (AGS), 2000 U.S. Dist. LEXIS 13138 (S.D.N.Y. Sept. 13, 2000) ("[i]n an action for unfair competition and false advertising under the Lanham Act, the locus of the operative facts is in the initial forum if the acts of unfair competition and the false statements occur in that forum"), other courts in this District focus on the location where the material was designed and created, s*ee, e.g.*, *Brasseler USA Dental, L.L.C. v. Discus Dental,*

---

[6] Cynthia Hughes-Coons, Bayer's Assistant General Counsel and the Bayer Animal Health lawyer who appears to be actively managing this litigation, is based in Shawnee, Kansas.

*Inc.*, 04 CIV.9404(NRB), 2005 WL 1765706 (S.D.N.Y. July 25, 2005) (deciding to focus on location where promotional material was created because "[r]esolution of the case will likely turn on whether the Zip! Burs comparative claims were false or misleading, not where they were distributed"); *Olympia Group, Inc. v. Cooper Indus., Inc.*, 00 CIV. 7367 (MBM), 2001 WL 506219 (S.D.N.Y. May 14, 2001) ("Even assuming that the sales of Cooper's tape measures in New York make New York the locus of operative facts, the sales are this case's only connection. No other significant events occurred in this District.") (internal citations omitted). Considerations regarding the locus of operative facts lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis. *See Beatie & Osborn*, 431 F. Supp. 2d at 394.

As discussed above, a focus on the location where the offending materials were created is more appropriate because the primary issues and allegations revolve around the creation of a specific "Dear Doctor" letter. (Compl. ¶¶ 21-32.) Resolution of the case will likely turn on whether the claims in the letter were false or misleading, not where they were distributed. (*See id.* ¶¶ 21-32, 37.) Those claims and the letter itself were created in the Southern District of Indiana and conceptualized, finalized, and approved by Elanco management in the Southern District of Indiana. (Graves Decl. ¶ 18.). While New York is a market for both parties, there is nothing unique about New York's role in this dispute beyond the alleged dissemination of the letter there. As there is no dispute regarding the specific content of the letter or that the letter was received by veterinarians in New York, New York is no more relevant to this case than any of the other places nationwide where veterinarians allegedly received the letter. Accordingly, this factor weighs in favor of transfer to the Southern District of Indiana.

Furthermore, in determining where the operative events took place, a Court should consider a plaintiff's theory of liability as well as any defenses that defendants may assert. *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 640 (S.D.N.Y. 1999) (citing 17 James Wm. Moore et al., Moore's Federal Practice § 111.13[1][d][ii] (3d ed.1997)). In this case, Bayer does not, as it would lead the Court to believe, only allege causes of action under the Lanham Act or New York state law. Bayer also alleges causes of action for state-law false advertising and unfair competition in all "other states in which Elanco circulated its [Dear Doctor] letter…" (Compl. ¶¶ 45, 47.)[7] That includes the Southern District of Indiana. Additionally, Bayer's complaint takes issue with Elanco's hiring practices. (Compl. ¶ 33.) Any hiring or recruiting decisions occurred in the Southern District of Indiana (Graves Decl. ¶ 27), and the locus of operative facts regarding this issue is in the Southern District of Indiana.

Moreover, upon information and belief, discovery concerning the actions of Bayer will likely revolve around actions and events occurring at Bayer Animal Health's Kansas headquarters, not in New York. For example, Plaintiff's Complaint discusses Bayer Animal Health's announcement of its decision to begin selling directly to the pet specialty market. (Compl. ¶ 18). This announcement was issued by "Bayer HealthCare LLC, Animal Health Division, Shawnee Mission, Kansas" and inquiries were directed to the Director of Communications and Public Policy in Shawnee, Kansas. (Bayer News Release dated Feb. 9, 2010, attached as Ex. E).

In light of Bayer's prior embrace of Indiana citizenship, the relative convenience of the witnesses and parties, and the operative facts and circumstances in this case, transfer to the Southern District of Indiana is appropriate.

---

[7] Similarly, although Bayer's response memorandum only discusses the harm it allegedly incurred in this District, Bayer also alleges harm in the Southern District of Indiana and other districts nationwide.

E.   The Location of Relevant Documents and Ease of Access to Other Sources of Proof Favor Transfer to the Southern District of Indiana.

Although courts, in the "era of electronic documents, easy copying and overnight shipping," accord less importance to the location of documents (Bayer Mem. 11), this factor should still be considered "to the extent that it bears on the convenience calculus." *Samson Lift Technologies v. Jerr-Dan Corp.*, 09 CIV. 2493RJH, 2009 WL 2432675 (S.D.N.Y. Aug. 7, 2009) (noting that even though "this factor has lost some of its original significance with the improvements in transportation and communications technology," the factor still favored transfer from the Southern District of New York where "operative events occurred largely in Pennsylvania and the corresponding documents that pertain to the operative events are located there.") As Bayer's sister company, Bayer Cropscience, recently noted in a brief supporting its motion for a § 1404 transfer, "if the need arise to refer to original documents or evidence in litigation [Bayer Cropscience's headquarters] would prove more convenient." *See* Bayer Cropscience's Mem. in Supp. of Mot. to Transfer, No. 4:11-cv-464-RWS at 5 (E.D. Mo. June 16, 2011) (citing *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010)) (Ex. H). Lilly has submitted evidence in the form of an unrebutted affidavit indicating that all relevant documents, e-mail, databases, electronic information, and networks—in essence, whatever Lilly/Elanco records that exist concerning the challenged conduct—are located in Indiana. (Lickliter Decl. ¶¶ 7-13). Thus, this factor favors transfer to Indiana.

Additionally, the availability of compulsory process favors transfer. Bayer is the plaintiff here and presumably is willing to produce records under its control proving the unfair competition and damage. It has not alleged that any witnesses in New York are unwilling to testify, and to the extent there are witnesses in Kansas who may be unwilling to testify, there is no difference in the availability of compulsory process between New York and Indiana. An

action in Indiana, on the other hand, will give an Indiana court process to demand the attendance of any potential yet-to-be identified Indiana witnesses associated with Elanco.

   F. <u>The Interests of Justice Favor Transfer to the Southern District of Indiana</u>.

   Bayer argues that this case should not be transferred because it has alleged false advertising claims under New York state law. (Bayer Mem. 12.) As noted above however, Bayer also alleges state-law false advertising and unfair competition causes of action in all "other states in which Elanco circulated its [Dear Doctor] letter…" (Compl. ¶¶ 45, 47.) That includes the Southern District of Indiana. Given that Bayer has alleged causes of action under state laws nationwide, including perhaps in the Southern District of Indiana, there is no reason that a court in the Southern District of Indiana would be any less familiar with the governing state law.

   On the other hand, courts consider relative trial efficiency and docket conditions of the transferor and transferee courts in considering a motion to transfer. *A. Olnick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 445 (2d Cir. 1966). As noted in Lilly's initial brief the time to disposition in the Southern District of Indiana appears to be faster—5.8 months in the Southern District of Indiana compared to 8.1 months in the Southern District of New York—due to an appreciably smaller caseload in the Southern District of Indiana. (Lilly Mem. 10-11.) Bayer objects to consideration of these statistics because it contends that the difference in average time to disposition, 2.3 months, is not meaningful. In doing so, Bayer fails to address the more important statistic—specifically that as of September 30, 2010, 44.3 percent of the 23,295 civil cases pending in the Southern District of New York had been pending for 3 or more years, whereas only 1.2 percent of 4,721 civil cases pending in the Southern District of Indiana had been pending for 3 or more years. Table C-6, U.S. District Courts—Civil Cases Pending, by District and Length of Time Pending, as of September 30, 2010, available at http://www.uscourts.gov/Statistics/JudicialBusiness/JudicialBusiness2010.aspx (Ex. E).

-13-

Although perhaps not dispositive of transfer standing alone, consideration of these statistics favors transfer to the Southern District of Indiana.

## **CONCLUSION**

Courts may transfer civil actions "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Considering Bayer's prior embrace of Indiana citizenship, the relative convenience of the witnesses and parties as discussed above, and in light of the facts and circumstances in this case, transfer to the Southern District of Indiana is appropriate. Accordingly, this case should be transferred to the Southern District of Indiana.

Dated:  New York, New York                Respectfully submitted,
        July 28, 2011

                                    /s/ Adam B. Michaels
                                    Adam B. Michaels (AM 9120)
                                    PEPPER HAMILTON LLP
                                    The New York Times Building
                                    620 Eighth Avenue
                                    New York, New York 10018-1405
                                    (212) 808-2700